IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

PAUL RUDY GUERRERO,                        )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )        Case No.: 6:12-CV-1072-CLS-SGC
                                           )
SHERIFF MIKE BLAKELY, MIKE GUNTER,         )
and GARY LOVELL,                           )
                                           )
            Defendants.                    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Paul Rudy Guerrero ("Plaintiff"), has filed a *pro se* complaint pursuant to 42 U.S.C.

§ 1983 alleging rights, privileges, or immunities afforded him under the Constitution or laws of the

United States have been abridged during his incarceration at the Limestone County Jail in Athens,

Alabama.  In the Amended Complaint, Plaintiff names Limestone County Sheriff Mike Blakely,

Investigator Mike Gunter, and Jailor Gary Lovell as defendants in their individual capacities and

seeks compensatory and punitive damages.  (Doc. 16).  In the Motion for Injunction, Plaintiff

requests this Court enjoin the State of Alabama from enforcing the registration requirement of the

Alabama Sex Offender Registration and Notification Act (ASORNA) against him.  (Doc. 10).

Finally, Plaintiff has moved to amend his request for injunctive relief. (Doc. 25).  In accordance with

the usual practices of this Court and 28 U.S.C. § 636(b)(1), the Amended Complaint was referred

to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy*

*v. Bronson*, 500 U.S. 136 (1991).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and

28 U.S.C. § 1915A, requires this Court to screen complaints filed by prisoners against officers or

employees of governmental entities and to dismiss a complaint or any portion of a complaint it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Thus, under § 1915A, the Court may *sua sponte* dismiss a prisoner's complaint prior to service. Nevertheless, to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## CLAIMS

### A.   Unlawful arrest method and unlawful detention

On July 30, 2010, Defendant Gunter "utilized an unreasonable arrest method on plaintiff upon receiving uncertified information that plaintiff [had been] convicted of a sex offense in the military and did not register under state law." (Doc. 16 at 3). Plaintiff contends the method chosen, which resulted in his unlawful detention in violation of due process of law, was unreasonable for two reasons. First, Defendant Gunter chose to "obtain[] an arrest warrant" instead of "giv[ing] plaintiff an opportunity to register." (*Id.* at 4). Plaintiff alleges the military did not inform him of his obligation to register as a sex offender under any jurisdiction, and since "[d]ue process requires fair notice that an act is subject to a law and must afford adequate time to comply to avoid penalties," Plaintiff declares Defendant Gunter unconstitutionally detained him. (*Id.* at 6). Second, although Defendant Gunter knew Plaintiff's home address, he arrested plaintiff in a K-Mart parking lot to humiliate Plaintiff. (*Id.* at 4). Plaintiff seeks compensatory and punitive damages.

Plaintiff's allegations concerning unlawful arrest and detention are better served by the Fourth Amendment's protection against unreasonable searches and seizures, rather than the Due

Process Clause of the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 813 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'")); *Pino v. Higgs*, 75 F.3d 1461, 1469 (10th Cir. 1996) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n.7 (1975) ("'[t]he Fourth Amendment [probable cause requirement] was tailored for the criminal justice system, and . . . always has been thought to define 'the process that is due' for seizures of persons. . . , including the detention of suspects pending trial.'")).

Alternatively, and *assuming arguendo* there could be a plausible procedural due process claim, the undersigned can find "no legal authority that creates a constitutional right to receive" the notice Plaintiff clearly believes he was entitled to prior to the issuance of an arrest warrant and his arrest. *See Ouma v. Clackamas County*, 2014 WL 1874051, * at 3 (D. Or. May 7, 2014) (finding no constitutional right to receive notification letter concerning an arraignment date, and thus no procedural due process violation when plaintiff, who failed to attend arraignment because he did not receive notice, was arrested pursuant to warrant for failure to appear in court). Nor did Plaintiff have any recognized, constitutionally protected interest in being arrested in a manner that did not cause him embarrassment.

With regard to the Fourth Amendment analysis, it is clear Plaintiff was arrested pursuant to a warrant. Therefore, the

> only available claim . . . under § 1983 [i]s for malicious prosecution. In *Heck v. Humphrey*, the Supreme Court distinguished false arrest from malicious prosecution, stating, "unlike the related cause of action for false arrest or imprisonment,

3

[malicious prosecution] permits damages for confinement imposed pursuant to legal process." 512 U.S. 477, 484 (1994). The issuance of a warrant – even an invalid one . . . – constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest. *See Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1, 4 (1st Cir.1995) (holding adopted by the Eleventh Circuit in *Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir.1996)); *see also Joyce v. Adams*, 2007 WL 2781196, at *4 (S.D. Ga. Sept. 20, 2007) ("*Regardless of the validity of the warrant*, plaintiff's allegations support a § 1983 malicious prosecution claim rather than a § 1983 false arrest claim." (emphasis added)).

*Carter v. Gore*, 557 Fed. Appx. 904, 906, 2014 WL 783151, at *2 (11th Cir. Feb. 28, 2014).

In this circuit, malicious prosecution "'has [been] identified . . . as a violation of the Fourth Amendment.'" *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (additional citation omitted)). "'[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law.'" *Id.* (quoting *Wood*, 323 F.3d at 882).

To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004); *Wood*, 323 F.3d at 881. As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882. . . . .
As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. *Brown [v. City of Huntsville, Ala.]*, 608 F.3d [724] at 734 [(11th Cir. 2010)]; *Wood*, 323 F.3d at 882; *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

*Id.* at 1256-57.

An examination of the state court criminal case against Plaintiff and the foregoing law show he has not stated a claim upon which relief can be granted in connection with his claim of malicious prosecution against Defendant Gunter. *See State of Alabama v. Paul Guerrero*, CC-11-132; CC-11-661.[1] On March 25, 2011, Plaintiff was indicted in the Circuit Court of Limestone County, Alabama for failing to register as a sex offender as required by Alabama law. *State of Alabama v. Guerrero*, CC-11-132. The indictment reads as follows: "Paul Rudy Guerrero . . . having been convicted of indecent acts with a child (UCMC Article 134) (2 counts) in Naval Air Station, Whidley Island Washington, did fail to register as a sexual offender within seven days of establishing residence within their jurisdiction, in violation of Section 13A-11-200 of the Code of Alabama." *Id.* On August 8, 2011, Plaintiff pled guilty to the charge in the indictment. *Id.* On the same day, Plaintiff pled guilty on an information that charged him with failing to give 30 days written notice of his intent to change his legal residence, . . . in violation of §15-20-23 of the Code of Alabama[.]" *State of Alabama v. Guerrero*, CC-11-661. Plaintiff was sentenced to 10 years in the state penitentiary for each offense, to run concurrently. *State of Alabama v. Guerrero*, CC-11-132; CC-11-661. Therefore, Plaintiff's convictions did not terminate in his favor. Nor have the convictions been overturned or expunged by any court.[2]

---

[1] This Court "take[s] judicial notice" of "state court proceedings." *Coney v. Smith*, 738 F.2d 1199, 1200 (11th Cir. 1984) (citing *Moore v. Estelle*, 526 F.2d 690, 694 (5th Cir. 1976)). *See also,* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (judicial notice taken of an online judicial system similar to AlaCourt).

[2] Plaintiff currently has a petition for writ of habeas corpus pending in this Court regarding these convictions. *See Paul Rudy Guerrero v. Freddie Butler et. al.*, 6:12-cv-3673-AKK-SGC.

"[A] state prisoner may not bring a claim for damages under 42 U.S.C. § 1983 'if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction.'" *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (quoting *Heck v. Humphrey*, 512 U.S. at 487).

> In order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid [a] § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87.  Since a judgment in Plaintiff's favor would necessarily imply the invalidity of his convictions, *Heck* necessarily precludes the malicious prosecution claim based on this count.  This claim is, therefore, due to be dismissed.

## B.   <u>Absence of a mattress or blanket for one night and being housed with another inmate</u>

On the weekend Plaintiff was initially arrested for failing to register as a sex offender (July 30-August 1, 2010), he was interviewed by jailors about his physical and mental health.  (Doc. 1 at 13).  He reported he suffered from diabetes, high blood pressure, and spinal cord damage to his neck for which he was receiving disability benefits.  (*Id.*).  He also reported he suffered from depression and had suicidal tendencies.  (*Id.* at 13-14).  Thereafter, Plaintiff was "clothed in a special anti-suicide suit and placed in a solitary holding cell" for his safety.  (*Id.* at 14).  Plaintiff asserts on July 30th another inmate was placed in the cell with him "in an attempt to indirectly injure" him "and cause extreme fear[,]" while admitting the other detainee caused him no harm and declaring the inmate "may have had the potential to do so."  (*Id.*).  Moreover, the other inmate was provided a mattress and blanket, while Plaintiff had to sleep "on a cold concrete slab bench."  (*Id.*).  Still, when

the jailor noticed Plaintiff did not have a mattress or blanket the next morning, "he promptly

provided these amenities." (*Id.*).

"It is well settled that the Eighth Amendment prohibitions against cruel and unusual

punishment do not apply to pretrial detainees." *Tittle v. Jefferson County Com'n*, 10 F.3d 1535,

1539 (11th Cir. 1994) (citing *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40 (1977).  Still,

> in regard to providing pretrial detainees with such basic necessities as food, living
> space, and medical care, the minimum standard allowed by the Due Process Clause
> is the same as that allowed by the Eighth Amendment for convicted persons.  The
> court recognizes that the limitations imposed by the Eighth Amendment and Due
> Process Clause arise in different contexts.  Nevertheless, with respect to the provision
> of basic necessities to individuals in the State's custody, the two provisions
> necessarily yield the same result.

*Hamm v. Dekalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

To establish an Eighth Amendment violation, a plaintiff must prove three elements: "(1) a

condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual

punishment], *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), (2) the defendant[s'] 'deliberate

indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294, 303 (1991), and (3) causation,

*Williams v. Bennett*, 689 F.2d 1370, 1389-90 (11th Cir. 1982)." *LaMarca v. Turner*, 995 F.2d 1526,

1535 (11th Cir. 1993).  Whether a particular condition of confinement constituted cruel and unusual

punishment is an objective inquiry; whether jail officials were deliberately indifferent to that

condition is a subjective inquiry.  *See Wilson*, 501 U.S. at 290.

Beginning with the first prong, prison conditions amount to cruel and unusual punishment

only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes*, 452

U.S. at 347.  While it is the duty of prison officials to furnish prisoners with "reasonably adequate"

food, clothing, shelter, and sanitation, *Newman v. Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd*

7

*in part on other grounds*, 438 U.S. 781 (1978), the Constitution "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349.   Accordingly, <u>extreme</u> deprivations are required to make out a conditions-of-confinement claim under the Eighth Amendment. *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004).  The plaintiff must "at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety."  *Id*. at 1289.

Plaintiff's allegations fail to satisfy either prong of the standard.   Plaintiff was without a mattress and blanket for one night in the company of a roommate who neither caused nor threatened to cause him any harm.  These conditions do not constitute the type of extreme deprivation envisioned by the Eighth Amendment.  Nor has he alleged any facts showing any defendant (he does not identify any by name) was deliberately indifferent to his needs.  Indeed, his own allegations show his lack of bedding was an oversight immediately corrected when discovered, and it is frivolous to suggest the mere presence of a roommate displays deliberate indifference.  This claim is due to be dismissed.

**C.**    **Questioning without counsel present and refusal to allow Plaintiff a phone call**

**1.**    **Questioning without counsel present**

Plaintiff contends on July 30, August 2, and August 5, 2010, Defendant Gunter ignored his requests for counsel and questioned him "even though waivers were signed."  (Doc. 16 at 6).  Plaintiff refused to answer any questions and was returned to his suicide cell each time.  (*Id.*).  It appears Plaintiff is alleging he was read his *Miranda* rights and signed the waivers but then expressed he desired counsel and was ignored.

"The reading of *Miranda* warnings is a procedural safeguard rather than a right arising out of the fifth amendment itself."  *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1442 (8th Cir. 1989)

(citing *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)).  "Thus, the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action."  *Id.* (citing *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976)).  Accordingly, Plaintiff's allegations are not actionable under section 1983, and, in any event, he gave no incriminating information against himself.

Additionally,

[t]he Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense."  U.S. Const. amend. VI.  As the amendment states, the right to counsel is guaranteed in all "criminal prosecutions," which the Supreme Court has made clear do not commence until "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *Texas v. Cobb*, 532 U.S. 162, 167–68 (2001).  In other words, the Sixth Amendment right to counsel ordinarily does not arise until there is a formal commitment by the government to prosecute; "[i]t is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified.'"  *United States v. Gouveia*, 467 U.S. 180, 189 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).  Accordingly, "[t]he mere filing of a complaint and the issuance of a warrant for the [accused's] arrest," does not constitute a formal commitment by the government to commence a criminal prosecution for purposes of the Sixth Amendment.  *United States v. Langley*, 848 F.2d 152, 153 (11th Cir. 1988).

*Lumley v. City of Dade City, Fla.*  327 F.3d 1186, 1195 (11th Cir. 2003).

Plaintiff has not pleaded sufficient facts from which the undersigned can determine when his Sixth Amendment right to counsel attached.  However, it is undisputed Plaintiff refused to speak to Defendant Gunter, and he has alleged no other facts showing his ability to mount an adversarial defense was harmed.  Accordingly, this claim is due to be dismissed for failure to state a claim upon which relief can be granted.

## 2.     <u>Refusal to allow Plaintiff a phone call</u>

Plaintiff declares Gunter directed "jail staff" to "unlawfully den[y]" his "post booking telephone call," despite Plaintiff's and the medical staff's repeated requests he be allowed to call his family.  (Doc. 16 at 6, 14).  He declares he had "a state-provided right to" do so "'without undue delay' after arrest."  (*Id*. at 7).   Plaintiff was finally allowed to make his phone call on August 11, 2013, after he had been in custody for 13 days.  (*Id.*).  Plaintiff claims the deprivation of this state-created right "created a liberty interest protected by the Due Process Clause," and Defendant Gunter "deprived [him] of his right to equal protection of the law and impeded the due course of justice, in violation of the First, Fifth, Sixth and Fourteenth Amendments of the United States Constitution." (*Id.* at 7).  Plaintiff does not identify the state-created right to which he refers, but Rule 4.2 of the Alabama Rules of Criminal Procedure does state, "[a]ny person under arrest shall be afforded an opportunity to make a telephone call to any person that he or she may choose, without undue delay."

"The right to make a phone call immediately upon arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law." *Harrill v. Blount County, Tenn.*  55 F.3d 1123, 1125 (6th Cir. 1995).   However, since a pre-trial detainee may not be punished without due process of law, *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979), and "a state-created liberty interest may originate in a state" law, Defendant Gunter shall be directed to respond to Plaintiff's allegations. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1422 (11th Cir. 1985) (citing *Vitek v. Jones*, 445 U.S. 480, 489-90 (1980)).

Plaintiff has not alleged facts showing a violation of his Fourteenth Amendment right to equal protection of the law. "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state

engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't. of Corr.*, 467 F.3d 1311, 1318 -1319 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir.1986)).  Plaintiff fails to show he is, in fact, similarly situated with any inmate who received more favorable treatment. "More basically, [Plaintiff's] equal protection claim fails because he has not alleged, let alone established, that he was treated differently on account of some form of *invidious discrimination* tied to a constitutionally protected interest.  He has not even claimed that he was treated differently from others because of race, religion, or national origin." *Id.* at 1319.  A "[m]ere error[,] . . . mistake in judgment . . . [or] arbitrary administration of a [rule,] without purposeful discrimination, does not violate the equal protection clause." *E & T Realty v. Strickland*, 830 F.2d at 114.  At best, Plaintiff has alleged he was treated in an arbitrary fashion.  Therefore, he has failed to state an actionable Equal Protection claim. Plaintiff's blanket recitation of the First, Fifth, and Sixth Amendments also fails to state a claim upon which relief may be granted.

**D.     Attack by other inmates**

On August 24, 2010, Plaintiff was removed from his suicide cell to a single cell in the violent offender unit of the jail.  (Doc. 16 at 13).  He declares "on or about September 3, 2010," Defendant Lovell failed to protect him when "two known brawny detainees were locked in [the] cell with him." (*Id.* at 9).  Plaintiff became aware of the men "standing in his cell" when he was awakened by the sound of the electronic closing mechanism on the cell door.  (*Id.*).  The men asked Plaintiff about his "crime in order to coerce a confession."  (*Id.*).  When Plaintiff refused, one of the men held Plaintiff down on his bed and the larger man "slapped plaintiff's bare stomach about 10 to 15 times."

11

(*Id.*).  Plaintiff continued to refuse to answer any questions, so "the bigger one put him in a massive choke hold from behind which nearly caused plaintiff to pass out."  (*Id.*).

Plaintiff contends he "was subjected to confession throughout the assault."  (*Id.*).  One assailant acted as a lookout when Defendant Lovell stopped and questioned and joked with both inmates while "making rounds."  (*Id.*).  Plaintiff maintains Defendant Lovell knew "about their potential for violence."  (*Id.*).  He also admits "he did not alert [Lovell] of the assault."  (*Id.*).  Plaintiff declares he did not do so because the inmates "knew what area[s] of [his] body were vulnerable for harm[,] namely the insulin injection sites on [his] stomach and" his pre-existing neck damage, and he was suspicious and fearful the attack was a "concerted effort with the inmates."  (*Id.* at 9-10).  Plaintiff also was suspicious Defendants Blakely or Gunter had "ordered the attack" to harm him  and induce a confession "based on their animosity" toward him but provides no details.  (*Id.*).

After speaking "2 or 3 minutes" at Plaintiff's cell, Defendant Lovell left.  (*Id.*).  The two inmates stayed inside Plaintiff's cell with him, and the larger assailant rubbed himself up against Plaintiff's backside and touched him in a suggestive manner while informing Plaintiff this would get Plaintiff ready for prison.  (*Id.*).  Then, the assault ended, Plaintiff fell asleep, and about an hour later the cell door opened and the inmates left.  (*Id.*).

As a result of the assault, Plaintiff suffered severe stomach bruising, paralysis on the right side of his face, and intense pain in his neck.  (*Id.*).  Plaintiff does not remember whether he requested medical attention after the assault, but he did tell a jailer the next day and was moved back to isolation.  (*Id.* at 10-11).  After he was released on bond, he "required a cervical epidural . . . to treat neck pain."  (*Id.* at 10).  Plaintiff declares Defendant Lovell "acted with reckless disregard to

12

his safety when [the] known violent detainees were locked in a cell with him, and further 'depriv[ed] him' of equal protection of the law[]." (*Id.* at 11,13).

1. <u>**Failure to Protect**</u>

Although prison officials have a duty to protect inmates from violence by other prisoners, they are not the guarantors of a prisoner's safety. *Morgan v. Toombs Co., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). The Eighth Amendment is violated only when a prisoner is incarcerated under conditions which expose him to a "substantial risk of serious harm" and only when prison officials are "deliberately indifferent" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's interest or safety will not support an Eighth Amendment claim. *Id*. at 835. Prison officials cannot be liable under the Eighth Amendment unless they know of and disregard an excessive or substantial risk to inmate health or safety. *Id*. at 837.

When viewed in light of the above parameters, it is clear Plaintiff's Complaint fails to allege facts sufficient to state a claim under the Eighth Amendment. Although he accuses Defendant Lovell of being aware the inmates were violent, Plaintiff cites no specific incidents that would have put Defendant Lovell on notice Plaintiff faced a "substantial risk of serious harm" from the alleged attackers. Nor does he not state he had been involved in previous altercations with these inmates. Moreover, he specifically chose not to notify Defendant Lovell about the attack when he had an opportunity to do so, based on no more than speculative suspicions about Defendants Blakely and Gunter. There is nothing in the Complaint which suggests the attack was anything more than a

random act of violence.[3]  Plaintiff has, therefore, failed to plead any facts suggesting Defendant Lovell was aware of events or circumstances from which he could have drawn the inference the danger faced by Plaintiff from these particular inmates was "substantial" or "excessive," or there was a "strong likelihood" Plaintiff would be injured. Without such a showing, Plaintiff has not stated a claim under the Eighth Amendment.

### 2.   Equal Protection

To the extent Plaintiff alleges Defendant Lovell's failure to protect him violated his right to equal protection, the claim fails because he has not alleged, let alone established, he was similarly situated to other inmates who were treated more favorably than him "on account of some form of *invidious discrimination* tied to a constitutionally protected interest." *Sweet v. Sec'y, Dep't. of Corr.*, 467 F.3d at 1319.  This claim is due to be dismissed for failure to state a claim upon which relief can be granted.

### E.   Registration as a sex offender under ACNA, (repealed July 1, 2011)

Plaintiff next alleges when he was released on bond on September 14, 2010, Defendant Gunter "exceeded his authority by adjudicating guilt upon plaintiff by registering plaintiff as a sex offender" under the Alabama Community Notification Act ("ACNA").   (Doc. 16 at 7).  Further, Defendant Gunter "mandated" Plaintiff "obtain an altered driver's license" that displayed a "'criminal sex offender'" stamp on it without a court order or "a feasible pre-deprivation hearing

---

[3]Absent a pervasive risk of harm within a prison, it seems clear a failure to protect an inmate from a random act of violence does not, alone, demonstrate deliberate indifference on the part of prison officials.  *See James v. Milwaukee County*, 956 F.2d 696 (7th Cir.) (citing *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991)).

promulgated by state law by the Department of Public Safety to protect due process rights of those who may be affected." (*Id.* at 7-8).[4]

"[U]nder arbitrary enforcement of the [A]CNA[,]" Plaintiff was forced to move out of the house with his family because minor children lived there, and then, on November 24, 2010, Defendant Gunter  displayed a picture of Plaintiff at a trailer park Plaintiff was visiting.  (*Id.*). Around February 20, 2011, Plaintiff "reluctantly obtained [the] altered license without a court order" at the Limestone County Courthouse.  (*Id.* at 8).  Based on Defendant Gunter's display, Plaintiff was arrested again on June 2, 2011 for failure to notify authorities of a change of residence, as required by ACNA.  (*Id.*).  On August 8, 2011, Plaintiff was convicted and sentenced for this offense.  (*Id.*). Plaintiff alleges Defendant Gunter deprived him of "protected liberty interests" in "familial relationships, reputation, [and] standing in the community."  (*Id.*).  He demands compensatory and punitive damages.  (*Id.* at 5).

Plaintiff contends Defendant Gunter's act of arbitrarily registering him as a sex offender and Defendant Gunter's display of his picture resulted in his criminal convictions.  "[A] state prisoner may not bring a claim for damages under 42 U.S.C. § 1983 'if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction.'" *Hughes*, 350 F.3d at 1160 (quoting *Heck*, 512 U.S. at 487).

---

[4] Plaintiff does not state what this law is.  However, it appears an individual who was notified by the Alabama Department of Public Safety he is subject to ACNA could seek "administrative review of the Department's decision that he is subject to the CNA."  *See Alabama Department of Public Safety v. Prince*, 34 So. 3d 700, 701 (Ala. Civ. App. 2009) (citing the Alabama Administrative Procedure Act "the APPA", Code of Alabama (1975) § 41-22-1, *et. seq.*) If the individual did not receive a favorable ruling before an Administrative Law judge, he could appeal the question to a circuit court.  *Id.*  It appears Plaintiff did not utilize these procedures.

> In order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid [a] § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87.  Since a judgment in Plaintiff's favor would necessarily imply the invalidity of his convictions, *Heck* necessarily precludes the claims alleged by Plaintiff.

**F.    Jail Credit**

Plaintiff complains his jail credit was improperly calculated, which has affected his eligibility for early release and parole.  (Doc. 16 at 12).  Since granting relief on this claim would necessarily affect the length of his sentence, Plaintiff's claim properly sounds in habeas corpus and, thus, is not actionable as a section 1983 claim.  *See Prieser v. Rodriguez*, 411 U.S. 475, 487-89 (1973) (holding habeas corpus is the appropriate remedy for challenges to credits that shorten the length of a prisoner's confinement.)  Therefore, it is due to be dismissed.

**G.    Supervisory liability claims against Defendant Blakely**

Plaintiff alleges Defendant Blakely violated his constitutional rights by failing to properly supervise and train his officers "to refrain from unconstitutional arrest and detention"; failing to enforce a policy of not allowing inmates to enter occupied cells; detaining Plaintiff without notifying the Clerk of the Court, which prevented Plaintiff from earning jail credit;  failing to adopt a policy to control inmate violence; failing to adopt a policy to ensure he would have been placed in a cell for one night with proper bedding and no roommate; and failing to adopt a policy to ensure he would have been afforded a telephone call without undue delay.  (Doc. 16 at 12-15).

Plaintiff has not alleged Defendant Blakely was personally involved in the incidents about which he complains.  Moreover, with the exception of his claim Defendant Gunter deprived him of a phone call, Plaintiff has not even stated a constitutional claim against any of the subordinate defendants, and, therefore he cannot state a claim against Defendant Blakely based on a supervisory liability theory.  Plaintiff simply attempts to implicate Defendant Blakely through the concept of *respondeat superior*.  However, "[t]here is no *respondeat superior* liability under § 1983."  *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-92 (1978) and *LaMarca*, 995 F.2d at 1538).  "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."  *Braddy v. Florida Dept. of Labor and Employment Security*, 133 F.3d 797, 802 (11th Cir. 1998).  Supervisory personnel may be held accountable for the constitutional violations of their subordinates upon proof they (1) were directly involved in the wrongdoing; (2) failed to remedy a wrong after learning of it through report or appeal; (3) created or allowed a policy under which the violation occurred; or (4) were grossly negligent in managing the subordinates who caused the wrongdoing. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986).  Plaintiff has not alleged specific facts with regard to Defendant Blakely that would establish any of these factors.

Nor has he alleged facts to establish Defendant Blakely failed to train his subordinates, such that a constitutional claim has been stated against Defendant Blakely.

> [A] plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had "actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights," and that armed with that knowledge the supervisor chose to retain that training program. *Connick v. Thompson*, —— U.S. ——, ——, 131 S. Ct. 1350, 1360 (2011).

> To establish that supervisor was on actual or constructive notice of the
> deficiency of training, "[a] pattern of similar constitutional violations by untrained
> employees is ordinarily necessary." *Id.* (internal citations omitted).  Here, [plaintiff]
> does not allege, much less establish, a pattern of similar constitutional violations by
> untrained employees.

*Keith v. DeKalb County, Georgia*, 749 F.3d 1034, 1053 (11th Cir. 2014) (all but first and last

alterations in original).  Plaintiff has not shown Defendant Blakely knew of, sanctioned, participated

in, or was otherwise affirmatively linked to the acts about which he complains.  Accordingly, the

claims against Defendant Blakely are insufficient to state a cause of action under 42 U.S.C. § 1983.

## H.    Registration under ASORNA, (enacted July 1, 2011).

Plaintiff has moved to amend (Doc. 25) his request (Doc. 10) that this Court "issue a

mandatory injunction" on due process grounds that relieves him from the obligation to comply with

"all registration requirements" of the Alabama Sex Offender Registration and Notification Act

(ASORNA).  Initially, Plaintiff argues he should not be required to register under ASORNA because

he received a letter from the Judge Advocate General of the U.S. Navy that proves "no registration

[is] required under federal, military, nor any state jurisdiction." (Doc. 10 at 2).  He also attaches the

case of *United States v. Jones*, 383 Fed. Appx. 885 (11th Cir. 2010) for the proposition "military

offenses specified by the Secretary of Defense were limited to their extent, therefore registration [i]s

not required." (*Id.* at 2).  In that case, the Eleventh Circuit remanded the case to the district court

for a determination of whether Jones' court martial for sodomy was "a military offense that requires

SORNA registration." *United States v. Jones*, 383 Fed. Appx. at 890.

The letter from the JAG office simply states the office has no copy of "any DD Form 2791,

Notice of Release/Acknowledgment of Convicted Sex Offender Registration Requirements."

(Exhibit A to Doc. 10 at 6).  The JAG Commander informed Plaintiff this was not unusual because

18

his March 29, 1995 "conviction and release from confinement precede the requirement for the form" and, further, the "record of trial" did not include "any equivalent record that you were notified of a requirement to register as a sex offender." (*Id.*). Plaintiff takes these statements to mean he was not given "fair notice" he was required to register as a sex offender in Alabama, and he is not required to register under ASORNA because the Alabama statute "cannot conflict" with his interpretation of the meaning of the Navy letter.

In the case cited by Plaintiff, *United States v. Jones*, the Eleventh Circuit remanded Jones's case to the district court for a determination of whether Jones' court martial for sodomy was "a military offense that requires SORNA registration" as part of Jones' supervised release. *Id.* at 890. The Eleventh Circuit did so because the Sex Offender Registration and Notification Act (SORNA), a federal law enacted in July 2006, provides a conviction can be defined as a "criminal offense" or "sex offense" for SORNA purposes if it was "'a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(I) of Public Law 105-119 (10 U.S.C. § 951)." *Id.* at 889 (citing 42 U.S.C. 16911(5)(A) (I, ii, iv)). The Secretary of Defense, in turn, had specifically identified a limited number of military offenses that required compliance with SORNA. (*Id.*). Since it was not readily discernible whether the circumstances surrounding Jones' sodomy conviction qualified as the type of sodomy offense for which the Secretary of Defense required SORNA registration, and the district court had not made specific factual and legal findings as to that matter, the case was remanded for such determination.

Neither document is applicable to Plaintiff's circumstances nor supports Plaintiff's arguments. The question is not whether Plaintiff's military conviction requires he be given fair notice he must register as sex offender pursuant to SORNA, a federal law, but whether his military

conviction requires him to register under ASORNA, a law of the State of Alabama.  ASORNA, which is codified at Ala. Code (1975), §§ 15-20A-1, *et. seq.*, "is applicable [for life] to every adult sex offender convicted of a sex offense as defined in Section 15-20A-5, without regard to when his or her crime or crimes were committed or his or her duty to register arose."  § 15-20A-3(a) & (b).  Pursuant to § 15-20A-4, a conviction is defined as

> [a] determination or judgment of guilt following a verdict or finding of guilt as the result of a trial, a plea of guilty, a plea of nolo contendere, or an Alford plea. Conviction includes, but is not limited to, a conviction in a United States territory, *a conviction in a federal or military tribunal, including a court martial conducted by the Armed Forces of the United States*, a conviction for an offense committed on an Indian reservation or other federal property, a conviction in any state of the United States or a conviction in a foreign country if the foreign country's judicial system is such that it satisfies minimum due process set forth in the guidelines under Section 111(5)(B) of Public Law 109-248.  Cases on appeal are deemed convictions until reversed or overturned.

Section 15-20A-5 sets out thirty (39) "sex offenses."  Plaintiff was convicted of two counts of indecent acts with a child.  As a whole, the numerous sex offenses listed are both specific and general.  Indeed, it contains a provision that includes

> any crime committed in any jurisdiction which, irrespective of the specific description or statutory elements thereof, is in any way characterized or known as rape, carnal knowledge, sodomy, sexual assault, sexual battery, criminal sexual conduct, criminal sexual contact, sexual abuse, continuous sexual abuse, sexual torture, solicitation of a child, enticing or luring a child, child pornography, lewd and lascivious conduct, taking indecent liberties with a child, molestation of a child, criminal sexual misconduct, or video voyeurism.

§ 15-20A-5 (37).

Plaintiff's attempt to establish a connection between SORNA and ASORNA is a comparison of apples to oranges.  Although Plaintiff contends the Navy letter means he is not required to register under ASORNA, the letter states no such thing.  Indeed, it only reflects there is no form or indication

in the trial record of his court-martial stating he must register or was notified to register as a sex offender under SORNA. As stated by the JAG Commander, the absence of such documents is not unusual, as SORNA was enacted a year after Plaintiff's court martial. Additionally, the case relied on by Plaintiff involves whether a particular military conviction qualified as a sex offense under SORNA. Unlike ASORNA, which takes pains to provide almost no limitations on what qualifies as a sex conviction and expressly incorporates military convictions in its broad and expansive coverage, SORNA expressly limits its application in the context of military offenses to those deemed to be the more limited and more strictly defined sex offenses identified by the Secretary of Defense.

The State of Alabama, not the United States Congress, is charged with creating and implementing its own legislation. SORNA "generally constitutes a set of minimum national standards, and sets a floor, not a ceiling, for [state sex offender registration and notification] programs." *The National Guidelines for Sex Offender Registration and Notification*, 73 FR 38030-01, 2008 WL 2594934 at * 31 (FR) (July 2, 2008). Therefore, the State of Alabama, through ASORNA, is free to "exceed" SORNA. *Id.* Alabama has exceeded SORNA requirements in that ASORNA does not contain the limiting language that created the factual and legal inquiry necessary in *United States v. Jones*.

ASORNA provides Plaintiff can be, and in fact, Plaintiff has been, registered as a sex offender based on his criminal convictions for indecent acts with a child. Accordingly, he received all the process he was due. *See Doe v. Moore*, 410 F.3d 1337, 1342 n.3 (11th Cir. 2005) (quoting *Connecticut Dept. Of Public Safety v. Doe*, 538 U.S. 1, 7 (2003) ("no liberty interest was implicated because the . . . [sex offender] statute turned 'on an offender's conviction alone.'")). Therefore, Plaintiff cannot establish a federal due process violation on the grounds he was not afforded a

hearing prior to being subjected to ASORNA when it was enacted on July 1, 2011, nor is he currently being deprived of due process of law.

Finally, the undersigned addresses Plaintiff's Motion to Amend his request for injunctive relief.  (Doc. 25).  In support thereof, Plaintiff declares he "has a Presidential Pardon now pending in the Department of Justice," and attaches a letter dated October 13, 2013 from the Deputy Director of the Department of the Navy acknowledging the Department had received Plaintiff's February 2, 2013, "petition seeking a Presidential Pardon."  (Doc. 10 at 1).

It is recommended Plaintiff's Motion to Amend (doc. 25) be **DENIED**.  The content of Plaintiff's motion and exhibit reveal only Plaintiff has taken steps to file a petition seeking a presidential pardon from his sex convictions.  Plaintiff has not been granted a presidential pardon, and as such, the Court is precluded from further review of the matter.

For all of the foregoing reasons, Plaintiff has failed to establish he is not subject to current ASORNA on due process grounds.  Accordingly, he is not entitled to a permanent injunction against enforcement of ASORNA.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, the undersigned **RECOMMENDS** Plaintiff's Motion to Amend (Doc. 25) be **DENIED** and all claims against all Defendants be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2), with the exception of Plaintiff's claim Defendant Gunter deprived him of due process of law when he refused to allow him to make a telephone call until 13 days after his arrest.

## NOTICE OF THE RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. Any objections to the failure of the magistrate judge to address any facts or legal arguments also must be included. Failure to do so will bar any later challenge or review of the magistrate judge's factual findings or legal conclusions. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140(1985), *reh'g denied*, 474 U.S. 1111 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).

To challenge the magistrate judge's factual findings or legal conclusions, a party must file with the clerk of the court written objections specifically identifying the factual findings or legal conclusions to which objection is made and the specific basis for objection. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in the objections. A copy of the objections must be served on all other parties to the action.

On receipt of objections meeting the foregoing specificity requirement, a district judge shall make a *de novo* determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify in whole or in part, the magistrate judge's factual findings or legal conclusions. The district judge, however, need conduct a hearing only in his or her discretion or if required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions. Objections not meeting the foregoing specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

**DONE** this 11ᵗʰ day of July, 2014.


_____
STACI  G.  CORNELIUS
U.S. MAGISTRATE JUDGE